UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

UNITED STATES OF AMERICA

    -v.-

ISHAN WAHI,
NIKHIL WAHI, and
SAMEER RAMANI,

          Defendants.

------------------------------------- X

  :
  :
  :
  :
  :
  :
  :
  :

**SEALED INDICTMENT**

22 Cr.

**22 CRIM 392**

## COUNT ONE
**(Conspiracy to Commit Wire Fraud)**

The Grand Jury charges:

### Overview of the Charges

1.　From at least in or about June of 2021 through in or
about April of 2022, ISHAN WAHI, NIKHIL WAHI, and SAMEER RAMANI,
the defendants, generated more than a million dollars in illegal
trading profits through their participation in a scheme to
engage in insider trading in crypto assets that were listed or
were under consideration for listing on Coinbase Global, Inc.
("Coinbase"), a major online cryptocurrency exchange platform.
As part of the insider trading scheme, ISHAN WAHI violated his
duties of trust and confidence to Coinbase by providing
confidential business information that he learned in connection
with his employment at Coinbase to NIKHIL WAHI and SAMEER RAMANI
so that they could secretly engage in profitable trades around

public announcements by Coinbase that it would be listing certain crypto assets on Coinbase's exchanges.

2.     ISHAN WAHI, the defendant, was a Coinbase employee involved in the highly confidential process of listing crypto assets on Coinbase's exchanges. As a result, ISHAN WAHI had detailed and advanced knowledge of which crypto assets Coinbase was planning to list and the timing of public announcements about those listings. Because the market value of crypto assets typically significantly increased after Coinbase announced that it would be listing a particular asset on its exchanges, Coinbase kept the information strictly confidential and prohibited its employees from sharing that information. In violation of these policies and his duties of trust and confidence to Coinbase, ISHAN WAHI misappropriated that confidential business information to tip his brother, NIKHIL WAHI, the defendant, and ISHAN WAHI's friend and associate, SAMEER RAMANI, the defendant, so that they could use that confidential information to make well-timed purchases of crypto assets in advance of Coinbase's listing announcements.

3.     After Coinbase's listing decisions became public, and after the crypto assets appreciated due to that announcement, NIKHIL WAHI and SAMEER RAMANI, the defendants, caused the sale of those crypto assets for substantial profits. In total,

2

during the course of the scheme, NIKHIL WAHI and RAMANI collectively caused purchases of at least 25 crypto assets in advance of at least 14 separate Coinbase crypto asset listing announcements. As a result of the insider trading scheme, NIKHIL WAHI and RAMANI collectively generated realized and unrealized gains totaling at least approximately $1.5 million.

4.     The defendants also took numerous steps to evade detection from law enforcement. Throughout their illegal trading, NIKHIL WAHI and SAMEER RAMANI, the defendants, attempted to conceal their trading by transferring their crypto assets through a web of crypto accounts and anonymous Ethereum blockchain wallets, including through accounts held in others' names. In or about May 2022, as the illegal insider trading scheme came to light, ISHAN WAHI, the defendant, purchased a one-way airline ticket to a foreign country in an unsuccessful attempt to flee from the United States.

Background

5.     At all times relevant to this Indictment, Coinbase was one of the largest cryptocurrency exchanges in the world. Coinbase allowed users to acquire, exchange, and sell various crypto assets in online user accounts. In order to transact in a particular crypto asset on Coinbase, that crypto asset must be listed on Coinbase's exchanges.

3

6.     During the time period relevant to this Indictment, Coinbase frequently announced that particular crypto assets would be listed on one of its exchanges or were under consideration for listing.  Coinbase often made these announcements on Coinbase's publicly available blog or Twitter account.  It was well known that after Coinbase announced that it was going to be listing or was considering listing a particular crypto asset, the market value of that crypto asset typically rose substantially.

7.     Because Coinbase viewed its reputation as a fair forum of exchange as essential to its business success, Coinbase took steps to guard the confidentiality of information regarding prospective asset listings and to ensure that potential traders did not learn of prospective listings before the company announced them formally to the general public. The company's policies and agreements thus prohibited employees from using confidential information about asset listings, including which crypto assets it intended to list on its exchanges, except for the benefit of Coinbase. Indeed, Coinbase's policies made clear that employees "helping to implement support of [a] new asset" were prohibited from "buy[ing] the new asset" in advance of an announcement.  Coinbase's written policies also prohibited employees from disclosing the confidential information to any

person outside of Coinbase, including "family or friends," and expressly barred employees from providing a "tip" to any person who might make a trading decision based on the information.

8.   Beginning in or about October 2020, ISHAN WAHI, the defendant, was employed by Coinbase as a product manager assigned to an asset listing team.  Pursuant to the policies described above, and by virtue of his employment more generally, ISHAN WAHI was prohibited from sharing confidential business information about Coinbase's asset listings with others and from using that information other than for the benefit of his employer.  Moreover, as a member of Coinbase's asset listing team, ISHAN WAHI was subject to an "enhanced trading policy" that, among other things, required him to report his digital asset holdings and seek preclearance for any digital asset trades conducted by ISHAN WAHI outside of Coinbase's platform. During the course of his employment at Coinbase, ISHAN WAHI provided Coinbase with a written certification that he had read the company's trading and confidentiality policies, that he understood them, and that he would comply with them.

9.   As a product manager on one of Coinbase's asset listing teams, ISHAN WAHI, the defendant, frequently had advanced knowledge of which crypto assets Coinbase planned to announce it was listing or considering listing, and had advanced

5

knowledge of the timing of those announcements. Indeed, beginning at least in or about August 2021 and continuing until at least in or about May 2022, ISHAN WAHI was a member of a private messaging channel reserved for a small number of Coinbase employees with direct involvement in the Coinbase asset listing process. Upon joining the channel, ISHAN WAHI was informed by another Coinbase employee that its purpose was to provide a "safe place to discuss details around asset launches" such as "exact announcement / launch dates + timelines" that the company did not wish to share with all of its employees.

10. ISHAN WAHI, the defendant, knew that the asset listing information discussed within the messaging channel was highly confidential or "need to know" and not to be shared outside what ISHAN WAHI himself referred to as the "tighter circle" of Coinbase employees involved in the asset listing. ISHAN WAHI also knew that due to the highly confidential nature of asset listing information, he and other Coinbase employees with access to the information were prohibited from trading in assets under consideration for listing on Coinbase and tipping others so that they could trade on that information, no matter the forum in which the trading took place.

11. In connection with the scheme, ISHAN WAHI, the defendant, sought to deceive Coinbase and his fellow employees

by assuring them – through, among other means, Coinbase's private asset listing messaging channel (including interstate wire communications sent from ISHAN WAHI to a fellow Coinbase employee located in Manhattan, New York) – that he was maintaining the confidentiality of this information. In truth and in fact, however, ISHAN WAHI repeatedly breached his duty of confidentiality to Coinbase by misappropriating Coinbase's confidential information and providing it to his brother, NIKHIL WAHI, the defendant, and ISHAN WAHI's friend and associate, SAMEER RAMANI, the defendant, so that they could make profitable trades on the basis of that confidential information.

The Insider Trading Scheme

12. On numerous occasions beginning at least in or about June 2021 and continuing through in or about April 2022, ISHAN WAHI, the defendant, knew in advance both that Coinbase planned to list particular crypto assets and when Coinbase intended to make its public announcements of those asset listings, and misappropriated this Coinbase confidential information by providing it to either NIKHIL WAHI or SAMEER RAMANI, the defendants, so that they could place profitable trades in advance of Coinbase's public listing announcements. Upon learning Coinbase's confidential listing plans, NIKHIL WAHI and SAMEER RAMANI used anonymous Ethereum blockchain wallets to

7

acquire certain crypto assets shortly before Coinbase publicly announced that it was listing or considering listing those same assets on its exchanges.

13. Based on confidential information provided by ISHAN WAHI, the defendant, NIKHIL WAHI and SAMEER RAMANI, the defendants, collectively traded shortly in advance of at least 14 separate Coinbase public listing announcements concerning at least 25 different crypto assets, and then, in most instances, subsequently sold the crypto assets they had acquired for a profit. These trades collectively led to realized and unrealized gains totaling at least approximately $1.5 million. For example:

*Insider Trading in TRIBE*

a. In or about August 2021, as a result of his employment at Coinbase, ISHAN WAHI learned of Coinbase's intention to publicly announce that it was listing the crypto asset TRIBE on its exchanges. Because ISHAN WAHI was among a small group of Coinbase employees privy to Coinbase's confidential listing plans, he had access to detailed and specific information regarding when Coinbase's public announcement that it was listing TRIBE would occur. In breach of his duty of confidentiality to Coinbase, ISHAN WAHI tipped his brother, NIKHIL WAHI, about Coinbase's plan to list TRIBE.

8

b.    With advance knowledge of Coinbase's listing plans, on or about August 10, 2021, NIKHIL WAHI caused an anonymous Ethereum blockchain wallet – which has since been linked to NIKHIL WAHI through internet protocol ("IP") address records and blockchain analysis - to purchase approximately $60,000 worth of TRIBE tokens.  NIKHIL WAHI caused these purchases to be made in an anonymous Ethereum blockchain wallet mere minutes before Coinbase publicly announced that it would be listing TRIBE on its exchanges on August 10, 2021.  Following that announcement, the value of TRIBE increased substantially. The following day, NIKHIL WAHI, through multiple transactions, exchanged all of the TRIBE tokens for crypto stablecoins (each equivalent in value to 1 United States dollar) worth approximately $67,000, resulting in a profit of approximately $7,000.

*Insider Trading in XYO*

c.    In or about August 2021, as a result of his employment at Coinbase, ISHAN WAHI learned of Coinbase's intention to publicly announce that it was listing the crypto asset XYO on its exchanges.  Because ISHAN WAHI was among a small group of Coinbase employees privy to Coinbase's confidential listing plans, he had access to detailed and specific information regarding when Coinbase's public

9

announcement that it was listing XYO would occur.  In breach of
his duty of confidentiality to Coinbase, ISHAN WAHI tipped his
friend and associate, RAMANI, about Coinbase's plan to list XYO.

d.    With advance knowledge of Coinbase's listing
plans, between on or about August 31, 2021 and on or about
September 8, 2021, RAMANI caused a network of approximately 15
separate anonymous Ethereum blockchain wallets – which have
since been linked to RAMANI through either IP address records or
blockchain analysis – to purchase approximately $610,000 worth
of XYO tokens.  Following the September 8, 2021 Coinbase listing
announcement, the value of XYO increased substantially.  SAMEER
RAMANI then caused the XYO tokens that he had acquired to be
transferred to accounts held at a centralized exchange subject
to his control. At the time of those transfers the assets had
risen in value to being worth approximately $1.5 million, and
RAMANI had reaped gains of nearly $900,000.

### Insider Trading in ALCX, GALA, ENS, and POWR

e.    In or around November 2021, as a result of his
employment at Coinbase, ISHAN WAHI learned of Coinbase's
intention to publicly announce that it was listing the crypto
assets ALCX, GALA, ENS, and POWR on its exchanges.  Because
ISHAN WAHI was among a small group of Coinbase employees privy
to Coinbase's confidential listing plans, he had access to

detailed and specific information regarding when Coinbase's public announcement that it was listing ALCX, GALA, ENS, and POWR would occur. In breach of his duty of confidentiality to Coinbase, ISHAN WAHI tipped his brother, NIKHIL WAHI, about Coinbase's plan to list ALCX, GALA, ENS, and POWR.

f. With advance knowledge of Coinbase's listing plans, on or about November 15, 2021, NIKHIL WAHI caused anonymous Ethereum blockchain wallets – which have since been linked to NIKHIL WAHI through IP address records and blockchain analysis – to purchase approximately $134,000 worth of ALCX, GALA, ENS, and POWR tokens. NIKHIL WAHI caused certain of these purchases to be made in an anonymous Ethereum blockchain wallet mere minutes before Coinbase publicly announced that it would be listing ALCX, GALA, ENS, and POWR on its exchanges on November 15, 2021. Following that November 15, 2021 announcement, the value of certain of the tokens that NIKHIL WAHI had acquired increased substantially. NIKHIL WAHI then exchanged certain of the crypto tokens that he had acquired for stablecoins and transferred the remainder of the tokens and the stablecoin proceeds to accounts subject to his control. NIKHIL WAHI's trading collectively resulted in profits of approximately $13,000.

*Insider Trading Ahead of the April 2022 Announcement*

  g. In or around April 2022, as a result of his employment at Coinbase, ISHAN WAHI learned of Coinbase's intention to publicly announce that it was considering potentially listing dozens of crypto assets on its exchanges. Because ISHAN WAHI was among a small group of Coinbase employees privy to Coinbase's confidential listing plans, he had access to detailed and specific information regarding when Coinbase's public announcement that it was considering listing these various crypto tokens would occur. In breach of his duty of confidentiality to Coinbase, ISHAN WAHI tipped his friend and associate, RAMANI, about Coinbase's plan to announce that certain crypto assets were under consideration for listing on Coinbase's exchanges.

  h. With advanced knowledge of Coinbase's listing plans, RAMANI caused multiple anonymous Ethereum blockchain wallets – which have since been linked to RAMANI through IP address records and blockchain analysis – to purchase large quantities of at least six of the crypto assets that were to be included in Coinbase's April 11, 2022 listing announcement. RAMANI spent at least approximately $370,000 to acquire these crypto assets in advance of the April 11, 2022 announcement. Following Coinbase's April 11, 2022 public announcement

regarding the crypto assets that were under consideration for listing, the crypto assets purchased by RAMANI quickly thereafter appreciated by over at least over $195,000.

14. To conceal their purchases of crypto assets in advance of Coinbase's listing announcements, NIKHIL WAHI and SAMEER RAMANI, the defendants, used accounts at centralized exchanges held in the names of others, and transferred funds, crypto assets, and proceeds of their scheme through multiple anonymous Ethereum blockchain wallets. NIKHIL WAHI and RAMANI also regularly created and used new Ethereum blockchain wallets without any prior transaction history in order to further conceal their involvement in the scheme.

### ISHAN WAHI's Attempt to Flee the United States

15. Shortly after SAMEER RAMANI, the defendant, traded in advance of Coinbase's listing announcement on April 11, 2022, on or about April 12, 2022, a Twitter account that is well known in the crypto community, with hundreds of thousands of followers, tweeted that it had identified an Ethereum blockchain wallet "that bought hundreds of thousands of dollars of tokens exclusively featured in the Coinbase Asset Listing post about 24 hours before it was published." The trading activity referenced in the April 12, 2022 tweet was the trading caused by RAMANI on or about April 11, 2022. On April 13, 2022, Coinbase's Chief

Security Officer publicly replied on Twitter to the April 12, 2022 tweet, and stated that Coinbase had already begun investigating the matter.

16. On or about April 28, 2022, Coinbase's Chief Executive Officer posted on the company's publicly accessible blog that the company was investigating whether "someone inside Coinbase" leaked the company's confidential information "to outsiders engaging in illegal activity," and that any Coinbase employee who engaged in such activity would be "immediately terminated and referred to relevant authorities (potentially for criminal prosecution)."

17. Less than two weeks later, on May 11, 2022, and in connection with Coinbase's investigation of leaked confidential information, the company's director of security operations emailed ISHAN WAHI, the defendant, to inform him that he should appear for an in-person meeting relating to Coinbase's asset listing process at Coinbase's Seattle, Washington office on May 16, 2022. ISHAN WAHI confirmed he would attend the meeting.

18. After learning that he was going to be interviewed as part of Coinbase's investigation, ISHAN WAHI, the defendant, attempted leave the United States and flee to India. Specifically, on the evening of Sunday, May 15, 2022, the night before his meeting with Coinbase was scheduled to occur, ISHAN

WAHI purchased a one-way ticket for a flight to New Delhi, India that was scheduled to depart approximately 11 hours later, shortly before he was supposed to be interviewed by Coinbase. Prior to boarding the flight, ISHAN WAHI falsely told Coinbase employees with whom he worked that he already had departed for India, when in truth and in fact he had not, claiming that he was "out indefinitely" and that his departure was due to a medical emergency involving his father. Approximately thirty-five minutes before his scheduled departure time, ISHAN WAHI wrote to Coinbase's director of security operations that he "had to fly back home" but that the meeting could be rescheduled to occur later in the week or early the next week.

19. In the hours between booking the one-way flight to India and his scheduled departure time on May 16, 2022, ISHAN WAHI, the defendant, called and texted NIKHIL WAHI and SAMEER RAMANI, the defendants, about Coinbase's investigation, and sent both of them a photograph of the messages he had received on May 11, 2022 from Coinbase's director of security operations.

20. Prior to boarding his May 16, 2022, flight to India, ISHAN WAHI, the defendant, was stopped by law enforcement agents and prevented from leaving the country. Despite his claims to Coinbase's director of security operations that he could reschedule his meeting for later that week or early the next

week, ISHAN WAHI was traveling on a one-way ticket to India with an extensive array of belongings, including, among other items, three large suitcases, seven electronic devices, two passports, multiple other forms of identification, hundreds of dollars in U.S. currency, financial documents, and other personal effects and items.

## Statutory Allegations

21.  From at least in or about July 2021, up to and including in or about May 2022, in the Southern District of New York, and elsewhere, ISHAN WAHI and NIKHIL WAHI, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Sections 1343.

22.  It was a part and object of the conspiracy that ISHAN WAHI and NIKHIL WAHI, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme

and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Conspiracy to Commit Wire Fraud)

The Grand Jury further charges:

23.  The allegations contained in paragraphs 1 through 20 of this Indictment are hereby repeated, re-alleged, and incorporated by reference as if fully set forth herein.

24.  From at least in or about June 2021, up to and including in or about May 2022, in the Southern District of New York, and elsewhere, ISHAN WAHI and SAMEER RAMANI, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Sections 1343.

25.  It was a part and object of the conspiracy that ISHAN WAHI and SAMEER RAMANI, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals,

17

pictures, and sounds for the purpose of executing such scheme
and artifice, in violation of Title 18, United States Code,
Section 1343.

(Title 18, United States Code, Section 1349.)

### COUNT THREE
### (Wire Fraud)

The Grand Jury further charges:

26. The allegations contained in paragraphs 1 through 20
of this Indictment are hereby repeated, re-alleged, and
incorporated by reference as if fully set forth herein.

27. From at least in or about July 2021 up to and
including at least in or about May 2022, in the Southern
District of New York and elsewhere, ISHAN WAHI and NIKHIL WAHI,
the defendants, knowingly having devised and intending to devise
a scheme and artifice to defraud, and for obtaining money and
property by means of false and fraudulent pretenses,
representations, and promises, transmitted and caused to be
transmitted by means of wire and radio communication in
interstate and foreign commerce, writings, signs, signals,
pictures, and sounds, for the purpose of executing such scheme
and artifice, to wit, ISHAN WAHI and NIKHIL WAHI participated in
a scheme to deprive Coinbase of its exclusive use of
confidential business information related to Coinbase's plans to
list certain crypto assets on its exchanges by converting that

18

information to their own use and relying on it to engage in profitable trades in crypto assets, in breach of ISHAN WAHI's duties of trust and confidence to Coinbase.

(Title 18, United States Code, Section 1343 and 2.)

## COUNT FOUR
### (Wire Fraud)

The Grand Jury further charges:

28.    The allegations contained in paragraphs 1 through 20 of this Indictment are hereby repeated, re-alleged, and incorporated by reference as if fully set forth herein.

29.    From at least in or about June 2021 up to and including at least in or about May 2022, in the Southern District of New York and elsewhere, ISHAN WAHI and SAMEER RAMANI, the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, ISHAN WAHI and SAMEER RAMANI participated in a scheme to deprive Coinbase of its exclusive use of confidential business information related to Coinbase's plans to list certain crypto assets on its exchanges by converting that

information to their own use and relying on it to engage in profitable trades in crypto assets, in breach of ISHAN WAHI's duties of trust and confidence to Coinbase.

(Title 18, United States Code, Section 1343 and 2.)

## FORFEITURE ALLEGATION

30. As a result of committing one or more of the offenses alleged in Counts One through Four of this Indictment, ISHAN WAHI, NIKHIL WAHI, and SAMEER RAMANI, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

### Substitute Assets Provision

31. If any of the above-described forfeitable property, as a result of any act or omission of ISHAN WAHI, NIKHIL WAHI, and SAMEER RAMANI, the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461, to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)


_____
FOREPERSON

_____
DAMIAN WILLIAMS
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

v.

### ISHAN WAHI,
### NIKHIL WAHI, and
### SAMEER RAMANI

**Defendants.**

### SEALED INDICTMENT

22 Cr. ____

(18 U.S.C. §§ 1343, 1349, & 2)

DAMIAN WILLIAMS
United States Attorney.

**A TRUE BILL**

_____
Foreperson.

True Bill + Sealed Indictment
filed 7/19/22 before OTW

K